JUDGE SCHEINDLIN

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

08 CV 0529

UNITED STATES OF AMERICA : CIVIL NO.

: 04CR.828 (SAS)

:

V. :

:

:

DOMINIC ANTONUCCI, :

Movant/Petitioner :




**MOTION**
**TO VACATE, SET ASIDE, OR CORRECT SENTENCE**
**PURSUANT TO TITLE 28, UNITED STATES CODE, SECTION 2255**

Name of Movant: Dominic Antonucci

Prisoner No: 56682-054

Designation: FCI McKean, P.O. Box 8000, Bradford, PA 16701

Docket No: 04CR828(SAS)

1. Name of court, which entered judgment of conviction and sentence: United States District Court for the Southern District of New York, Scheindlin, J.

2. Date of judgment of conviction: January 5, 2007

3. Length of Sentence: 108 months' imprisonment, 3 years' supervised release, and $400.00 special assessment. On April 30, 2007, Mr. Antonucci was ordered to pay restitution to the victims identified in government exhibits "A" and "B."

4. Nature of offense: conspiracy to commit securities fraud, mail fraud, and wire fraud in violation of 18 U.S.C. 371, 1341, 1343 and 1346, 15 U.S.C. 78j(b) and 78ff, 17 C.F.R. 240.10b-5 [Count One]; securities fraud in violation of 15 U.S.C. 78j(b) and 78ff, 17 C.F.R. 240.10b-5 [Count Two]; securities fraud in violation of 15 U.S.C. 78j(b) and 78ff,

17 C.F.R. 240.10b-5 [Count Three]; tampering with evidence in violation of 18 U.S.C. 1512(c) and 18 U.S.C. 2. [Count Four].

5. What was your plea? Guilty

6. Kind of Trial? N/A

7. Did you testify at the trial? N/A

8. Did you appeal the judgment of conviction? No

9. If you did appeal, answer the following:

(a) Name of Court:

(b) Result:

(c) Date:

10. Have you filed any other petitions, applications, or motions with respect to the judgment under attack? No

11. If the answer to #10 was yes, give the following information.

(a) Name of Court:

(b) Nature of Proceeding:

(c) Grounds:

(d) Did you receive an evidentiary hearing?

(e) Result?

(f) Date of Result?

12. Grounds for 2255 Motion

A. Ground One: The conviction was obtained and sentence imposed in violation of the Sixth Amendment Right to Counsel, and the right to Effective Assistance of Counsel at all critical stages of the proceedings. The facts and legal arguments set forth in the attached memorandum of law are incorporated by reference herewith as if set forth at length hereat.

B. Ground Two: The conviction was obtained and sentence imposed in violation of the due process clause of the Fifth Amendment. The facts and legal arguments set forth in the

attached memorandum of law are incorporated by reference herewith as if set forth at length hereat.

13. If any of the grounds listed in 12A, and B, were not previously presented, state what grounds were not so presented, and give your reasons for not presenting them.

(a) The preferred vehicle for litigating a claim of ineffective assistance of counsel is the 2255 motion. ***Massaro vs. United States***, 538 U.S. 500, 123 S.Ct. 1690, 1692-94, 155 L.Ed.2d 714 (2003)

(b) Imposition of sentence based on materially inaccurate information violates due process and it is properly raised in a 2255 motion. ***United States v. McDavid***, 41 F3d 841, 843-844 (2d Cir. 1994), ***United States v. Malcolm***, 432 F2d 809, 816 (2d Cir. 1970), ***United States v. Stein***, 544 F2d 96, 101-103 (2d Cir. 1976)

14. Do you have any petitions or motions now pending with respect to the judgment under attack? No.

15. Give the name and address of every attorney who represented you in the following stages of the judgment attacked:

(a) Preliminary Hearing: N/A

(b) Arraignment & Plea: Carl F. Schoeppl, Schoeppl & Burke, P.A., 4800 N. Fed. Highway, 207-D, Boca Raton, FLA 33431-5178

(c) Trial: N/A

(d) Sentencing: Carl F. Schoeppl, Schoeppl & Burke, P.A., 4800 N. Fed. Highway, 207-D, Boca Raton, FLA 33431-5178

(e) Appeal: N/A

(f) Post-Conviction Motion (excluding this one): N/A

(g) Appeal from denial of post-conviction motion: N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment in the same court and at approximately the same time? Yes

17. Do you have any sentence to serve after this one? No

WHEREFORE, Movant prays that the court grant him all relief to which he may be entitled in this proceeding.

Cheryl J. Sturm
Attorney-At-Law
387 Ring Road
Chadds Ford, PA 19317
(484) 771-2000

Dominic Antonucci

Movant declares under penalties of perjury pursuant to 28 U.S.C. Section 1746 that the facts herein are true, and correct.

Dated: 1-04-08

Dominic Antonucci

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | : CIVIL NO. |
| | : 04CR.828 (SAS) |
| | : |
| V. | : |
| | : |
| | : |
| DOMINIC ANTONUCCI, | : |
| Movant/Petitioner | : |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO TITLE 28, UNITED STATES CODE, SECTION 2255**

**DOMINIC ANTONUCCI** moves this Honorable Court to Vacate, Set Aside, and/or Correct his Sentence pursuant to 28 U.S.C. Section 2255 for the following reasons:

1. The conviction was obtained and/or sentence imposed in violation of the Sixth Amendment to the Constitution of the United States, specifically, the right to the assistance of counsel and the right to effective assistance of counsel at all critical stages of the criminal proceedings.[1]

[1] The Sixth Amendment provides, in pertinent part, as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to

2. The conviction was obtained and/or sentence imposed in violation of the Fifth Amendment to the Constitution of the United States, specifically the right to due process of law and equal protection of the laws.[2]

## I. INCORPORATION BY REFERENCE

The facts set forth in the attached 2255 motion are incorporated by reference herewith as if set forth at length hereat.

## II. PROCEDURAL HISTORY

On August 10, 2004, the government filed an indictment charging Dominic Antonucci and six other individuals with fraud in the sale of securities issued by Platinum Investment Holding Corporation [hereinafter abbreviated "PIHC"] and New Focus Capital Partners [hereinafter abbreviated "New Focus"].

On May 19, 2005, Mr. Antonucci pled guilty to a four count superseding information arising from his participation in the two fraudulent schemes. The superseding information alleged that the fraudulent schemes began in the year 2001 and ended in the year 2002.

---

have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

[2] The Fifth Amendment provides, in pertinent part, as follows: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law...

The first scheme involved fraud in connection with the sale of PIHC units. Mr. Antonucci and the co-defendants made false representations that the proceeds from the sale of the units would be used to finance PIHC's efforts to acquire control of Platinum Investment Corporation [hereinafter abbreviated "Platinum"] and made false representations with respect to how much money would be paid to the brokers.

Page 7 of the information states:

> 12. In or about February 2001 and in or about August 2001, DOMINIC ANTONUCCI cause bank accounts to be opened for Platinum and PIHC, respectively. Proceeds from the sale of the PIHC units were deposited into the accounts. Funds from other businesses affiliated or controlled by ANTONUCCI, or other Antonucci family members were also commingled in the accounts with the PIHC proceeds.
>
> 13. Between in or about November 2001 and in or about August, 2002, DOMINIC ANTONUCCI, among others, misappropriated substantially all of the proceeds from the sale of PIHC units, by causing these proceeds to be transferred into bank accounts controlled by him or his co-conspirators. The transferred funds were used to pay personal expenses and the undisclosed commissions described herein.

The second scheme involved fraud in connection with the sale of interests in New Focus, a hedge fund managed by Platinum, by falsely representing to investors that their funds would be invested according to the dictates of "IntelliTrend XL," a proprietary trading system supposedly developed by Platinum.

Page 10 of the information states:

> 20. In or about 2001, DOMINIC ANTONUCCI caused trading accounts to be opened on behalf of New Focus and Platinum (the "New Focus Trading Account" and the "Platinum Trading Account," respectively) with a broker dealer (the "Broker Dealer") located in New York, New York. ANTONUCCI and his co-conspirators maintained personal trading accounts as separate sub-accounts within the Platinum Trading Account.

Third, the information charged that in the year 2002, Mr. Antonucci and the co-defendants destroyed documents with the intent to obstruct the SEC's investigation and to impair the integrity and availability of evidence relating to the investigation.

On May 2, 2005, the government offered Dominic Antonucci the opportunity to plead guilty to a superseding information charging the following federal crimes: conspiracy to commit securities fraud, mail fraud, and wire fraud in violation of 18 U.S.C. 371, 1341, 1343 and 1346, 15 U.S.C. 78j(b) and 78ff, 17 C.F.R. 240.10b-5 [Count One]; securities fraud in violation of 15 U.S.C. 78j(b) and 78ff, 17 C.F.R. 240.10b-5 [Count Two]; securities fraud in violation of 15 U.S.C. 78j(b) and 78ff, 17 C.F.R. 240.10b-5 [Count Three]; tampering with evidence in violation of 18 U.S.C. 1512(c) and 18 U.S.C. 2. [Count Four].

Page 2 of the written plea agreement reads, in pertinent part, as follows: "1. Under Appendix A of the Sentencing Guidelines, Section 2F1.1, U.S.S.G., is applicable to the offenses charged in Counts One through Four of the Information, which Counts are grouped pursuant to Section 3D1.2(c)." Page 2 of the plea agreement, without

explanation, does not apply USSG 2F1.1 but instead applies the guidelines under USSG 2B1.1(a). Page 4 of the plea agreement states that the petitioner will not "litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range set forth above..."

On May 19, 2005, Mr. Antonucci appeared with his attorney before the Honorable Gabriel W. Gorenstein, and entered a plea of guilty to the four-count-information.

On January 5, 2007, Mr. Antonucci was sentenced to one hundred eight (108) months' imprisonment, three (3) years' supervised release, and a $400.00 special assessment.

On April 30, 2007, Mr. Antonucci was ordered to make restitution to the victims identified in government Exhibits A and B.

**III. TIMELINESS OF 2255 MOTION**

28 U.S.C. 2255 reads, in pertinent part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court, which imposed the sentence to vacate, set aside, or correct the sentence.
>
> Unless the motion, and the files, and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render

the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;

(4) the date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence.

On January 5, 2007, the district court imposed the custodial component of the sentence. On April 30, 2007, the district court imposed the restitution component of the sentence. Mr. Antonucci did not file a direct appeal because his lawyer told him not to file it. Although it is not clear whether the judgment became final ten (10) days after January 5, 2007 or ten days after April 30, 2007, the instant 2255 motion is filed within

one year of January 5, 2008 plus ten (10) days, so it is timely. ***Clay vs. United States,*** 537 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003).

## IV. GROUND ONE: THE CONVICTION WAS OBTAINED AND SENTENCE IMPOSED IN VIOLATION OF THE SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

***Strickland vs. Washington***, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) established a two-pronged-test for evaluating claims of ineffective assistance based on inadequate legal assistance.

First, the district court makes a determination whether the defense attorney made an error or errors. ***Kimmelman vs. Morrison***, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) states, "a single serious error may support a claim of ineffective assistance of counsel." The Court added that "this single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance" even where "counsel's performance at trial was generally creditable enough," and even where counsel made "vigorous cross-examination, attempts to discredit witnesses, and an effort to establish a different version of the facts." Id. 477 U.S. at 386. ***Murray vs. Carrier,*** 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Second, the district court has to make a determination whether the error or errors prejudiced some aspect of the case. Prejudice is a "reasonable probability" as a probability sufficient to undermine confidence in the outcome. A reasonable probability is a standard a **less demanding standard** than "more likely than not." ***Strickland***, 466 U.S. at 693-94, 104 S.Ct. at 2052.

***Mask v. McGinnis***, 233 F3d 132, 139 (2d Cir. 2000) defined "reasonable probability" as follows:

> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be 'diametrically different,' 'opposite in character or nature', and 'mutually opposed' to our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate 'a reasonable probability that...the result of the proceeding would have been different.'

***Strickland vs. Washington***, 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) states that a claim of ineffective assistance of counsel requires the reviewing court to consider the **"totality of the evidence"** before the judge or the jury. "Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inference to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been affected but for the errors."

***Linstadt vs. Keane***, 239 F3d 191, 199 (2d Cir. 2001) describes the ***Strickland*** standard as follows:

> We need not decide whether one or another or less than all of these four errors would suffice, because ***Strickland*** directs us

> to look at the "totality of the evidence before the judge or jury" keeping in mind that "some errors have…a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture…" Id. at 695-96, 104 S.Ct. 2052. We therefore consider these errors in the aggregate. See ***Moore vs. Johnson***, 194 F3d 586, 619 (5th Cir. 1999)(holding that court should examine cumulative effect of errors committed by counsel across both the trial and sentencing)…

A criminal defendant has the right to effective assistance of counsel in connection with the decision to appeal the conviction and sentence. ***Roe vs. Flores-Ortega,*** 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), ***Garcia v. United States***, 278 F3d 134 (2d Cir. 2002).

**B. PLEA COUNSEL'S PERFORMANCE WAS DEFICIENT FOR FAILING TO OBJECT TO THE PLEA AGREEMENT WHICH DID NOT ACCURATELY AND CONSISTENTLY APPLY A SINGLE SENTENCING GUIDELINES MANUAL OR ACCURATELY COMPUTE THE SENTENCING GUIDELINE RANGE**

Fraud offenses committed before November 1, 2001 were graded under USSG 2F1.1 (hereinafter called the "2000 Guidelines"). USSG 2F1.1 was deleted effective November 1, 2001. Fraud offenses committed after November 1, 2001 were graded using USSG 2B1.1 (hereinafter called the "2001 Guidelines").

Page 2 of the plea agreement states, "1. Under Appendix A of the Sentencing Guidelines, Section 2F1.1, U.S.S.G., is applicable to the offenses charged in Counts One through Four of the Information, which Counts are grouped pursuant to Section 3D1.2(c)." This provision reads as if the parties had agreed that the 2000 Guidelines would be applied..

If the 2000 Guidelines had been used to compute the sentencing guideline range, then the computation would have been as follows:

Section 2F1.1 has a Base Offense Level of 6

Section 2F1.1 has a Specific Offense Characteristic of 12 (loss over $1.5 million but less that 2.5 million)

Section 2F1.1 adds 2 levels for more than minimal planning

Section 3B1.1 adds 4 levels for role

Section 3C1.1 adds 2 levels for obstruction of justice

Section 3E1.1 subtracts 3 levels for timely acceptance of responsibility

---

Total Offense Level = 23
Criminal History Category I
Sentencing Guideline Range = 46-57 months

---

Page 2 of the plea agreement, without explanation, does not apply USSG 2F1.1. Instead, it applies USSG 2B1.1, as if the parties intended that the 2001 Guidelines would be applied.

The sentencing guideline range obtained by application of the 2000 Guidelines is 46-57 months whereas the sentencing guideline range obtained by application of the 2001 Guidelines is 108-135 months.

The plea agreement is contradictory with respect to whether the 2000 Guidelines were going to be applied, or the 2001 Guidelines were going to be applied.

Where, as here, the plea agreement is contradictory in a material respect, contract principles dictate that the contradiction be interpreted against the government because it has enormous bargaining power and because it drafted the contradictory plea agreement. ***United States vs. Gebbie***, 294 F3d 540 (3d Cir. 2002), ***Innes vs. Dalsheim***, 864 F2d 974, 979 (2d Cir. 1988).

In this case, it would be reasonable to apply the 2000 edition of the guidelines manual because the fraudulent scheme was executed prior to November 1, 2001 although the misappropriation of funds occurred after November 1, 2001.[3]

Furthermore, it was the reasonable understanding of Mr. Antonucci that as consideration for his agreement to plead guilty, the guidelines most favorable to Mr. Antonucci would be applied. Mr. Antonucci arrived at this understanding as a result of conversations with his lawyer. He reasonably assumed the lawyer's statements were the product of an agreement with the prosecutor to the apply the guidelines most favorable to Antonucci.[4]

Finally, it was objectively reasonable for Mr. Antonucci to assume that he would be sentenced under the 2000 Guidelines. The case is not unlike ***United States v. Kilkenny***, 493 F3d 122 (2d Cir. 2007) where the Second Circuit Court of Appeals, in the context of a scheme to defraud a bank, ruled that it would violate the ex post facto clause to apply the provisions of USSG 2B1.1 where the fraudulent scheme was executed prior to November 1, 2001, even though the information alleged the scheme straddled November 1, 2001.

At minimum, counsel's performance was deficient for advising the petitioner to sign a plea agreement containing contradictory provisions. But for counsel's deficient performance, there was a reasonable probability the outcome would have been different

---

[3] USSG 2F1.1 was deleted effective November 1, 2001. [See Amendment #617 effective November 1, 2001 deleting USSG 2F1.1 and replacing it with USSG 2B1.1].

[4] If it turns out that the prosecutor agreed with the defense attorney to use the sentencing guidelines most favorable to Mr. Antonucci, then it would follow that Mr. Antonucci would be entitled to specific performance of the terms of the agreement with the defense attorney. ***United States v. Vaval***, 404 F3d 144, 152 (2d Cir. 2005), ***United States v. Ramsey***, 503 F.Supp.2d 554 (NDNY 2007), ***Santobello v. New York***, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

because there was a reasonable probability the 2000 Guidelines would have been applied resulting in a guideline range of 46-57 months instead of the 2001 Guidelines which resulted in a guideline range of 108-135 months. All things equal, there was a reasonable probability the sentence would have been within the 46-57 month range dictated by the 2000 Guidelines and not within the 108-135 month range indicated by the 2001 Guidelines.

**C. PLEA COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR ADVISING THE PETITIONER THAT HE COULD NOT APPEAL THE SENTENCE OR THE RESTITUTION ORDER**

Plea counsel's performance was deficient for advising the Petitioner that he could not appeal the custodial component of the sentence, or the restitution component of the sentence without breaching the plea agreement. ***Garcia, supra***.

Petitioner advised counsel that he wanted to appeal the custodial portion of the sentence. Counsel advised the Petitioner not to appeal the sentence because it could be regarded as a breach of the plea agreement. This advice fell below an objective standard of reasonableness because Petitioner had a good argument that the plea agreement was contradictory, that the sentencing guidelines range should have been computed as 46-57 months using the 2000 Guidelines and not 108-135 months using the 2001 Guidelines, and that he was entitled to specific performance of what he understood was a plea resulting in a sentence within the guideline range of 46-57 months

Petitioner's argument is supported by the rationale employed in ***United States v. Kilkenny***, 493 F3d 122 (2d Cir. 2007) where the Second Circuit Court of Appeals, in the context of a scheme to defraud a bank, ruled that it would violate the ex post facto clause

to apply the provisions of USSG 2B1.1 even though the charging instrument alleged the scheme straddled November 1, 2001.

In this case, the Petitioner had a good argument that 46-57 months should have been used as the benchmark for the guidelines sentence because the facts alleged indicate the fraudulent scheme was executed prior to November 1, 2001. If 46-57 months was the appropriate guidelines range, then the district court's sentence was not procedurally reasonable. ***Rita v. United States***, ___U.S.___, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), because a district court must make an accurate sentencing guidelines computation before considering the rest of the factors set forth in 18 U.S.C. 3553(a) in order for a sentence to be procedurally reasonable. ***United States v. Booker***, 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), ***United States v. Story,*** 503 F3d 436 (6th Cir. 2007).

With respect to the restitution component of the sentence, the restitution order was imposed for the full amount of the alleged loss but the sentencing court did not comply with 18 U.S.C. 3664(f)(2) which requires it to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid," with reference to the "financial resources and other assets of the defendant, including whether any of these assets are jointly controlled"; the "projected earnings and other income of the defendant"; and "any financial obligations of the defendant including obligations to dependents." 18 U.S.C. 3664(f)(2). ***United States v. Coates***, 178 F3d 681, 684 (3d Cir. 1999)[Plain error to fail to state the manner and schedule of payments after taking into account the defendant's financial resources"], ***United States v. Walker***, 353 F3d 130, 134 (2d Cir. 2003)[courts remain obligated to set payment schedules for restitution orders].

If plea counsel had consulted with Petitioner, and advised him to appeal the sentence, there was a reasonable likelihood he would have appealed the sentence. There was a reasonable likelihood the Court of Appeals would have reversed and remanded the custodial component of the sentence on the grounds that the plea agreement was inherently contradictory, and/or the restitution component of the sentence was imposed in an illegal manner because it failed to delineate a payment schedule.

**V. GROUND TWO: THE CONVICTION WAS OBTAINED AND SENTENCE WAS IMPOSED IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT**

**A. LEGAL PRINCIPLES**

***United States vs. Malcolm***, 432 F2d 809, 815-816 (2d Cir. 1970) states:

> Misinformation or misunderstanding that is materially untrue regarding a prior criminal record, or materially false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process. ***Townsend vs. Burke***, 334 U.S. at 740-741...

***Bibby vs. Tard***, 741 F2d 26, 30 (3d Cir. 1984) states:

> Due process is violated if a sentencing court imposes a sentence based on extensive and materially false information. ***Townsend vs. Burke***, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); see also ***United States vs. Jackson***, 649 F2d 967, 981 (3d Cir. 1981). Reliance on false assumptions about prior convictions may be of constitutional magnitude if the assumptions are materially untrue. ***United States vs. Tucker***, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)(invalid convictions)

**B. PERTINENT FACTS**

In the present case, the custodial component of the sentence violates due process because it appears the use of the 2001 Guidelines to compute the sentence contradicts that part of the plea agreement stating that USSG 2F1.1 will be used, and because using the

2001 Guidelines violates the ex post facto provisions of the Constitution based on the reasoning articulated in ***United States v. Kilkenny***, 493 F3d 122 (2d Cir. 2007).

In addition, the restitution component of the sentence violates due process because it assumes, without proof, that the information set forth in government Exhibits A and B is accurate, and because the sentencing court did not comply with 18 U.S.C. 3664(f)(2) which requires it to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid," with reference to the "financial resources and other assets of the defendant, including whether any of these assets are jointly controlled"; the "projected earnings and other income of the defendant"; and "any financial obligations of the defendant including obligations to dependents." 18 U.S.C. 3664(f)(2). ***United States v. Coates***, 178 F3d 681, 684 (3d Cir. 1999), ***United States v. Walker***, 353 F3d 130, 134 (2d Cir. 2003)[courts remain obligated to set payment schedules for restitution orders].

## VI. HEARING REQUIRED

28 U.S.C. 2255 reads, in pertinent part, as follows:

> Unless the motion, and the files, and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

***Aron vs. United States***, 291 F3d 708, 714 (11th Cir. 2002) states:

> As we have previously stated, if the petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim."
>
> The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only allege--not prove--reasonably specific, non-conclusory facts that, if true would entitle him to relief. If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous, the district court is required to hold an evidentiary hearing. It is in such a hearing that the petitioner must offer proof.

***Armienti vs. United States***, 234 F3d 820 (2d Cir. 2000) indicates that the moving party is expected to allege facts, but he is not required to prove the claim in the 2255 motion.

**VII. CONCLUSION**

Unless the 2255 motion is granted on the motion, files, and records of the case, Movant requests discovery and a hearing on the 2255 motion.

Cheryl J. Sturm
Attorney-At-Law
387 Ring Road
Chadds Ford, PA 19317
484/771-2000

# EXHIBITS

Statement of facts

The plaintiff believed that page 2 of the plea agreement stated:

1. Under appendix A of the Sentencing Guidelines, Section 2F 1.1 USSG is applicable to the offenses charged in counts one through four of the information.

2. The Plaintiff believed that the ultimate sentence to be imposed by Judge Schelindlin was 46 to 57 months. At no time was the Plaintiff under any impression of sentence except the aforementioned 46 to 57 months. In fact the Plaintiff researched the applicable USSG 2F1.1 manual, this USSG manual reinforced the 46 to 57 month rationale.

3. The Plaintiff was told by Carl Schoeppel, Esq., that the sentence was 46 to 57 months to further reinforce the printed and in writing plea agreement furnished by the AUSA Mr. William Stellmach.

Based on the Section 2F1.1 of the USSG in the plea agreement I believed and continue to believe that the sentence negotiated with the AUSA and the government was for 46 to 57 months. Furthermore Chuck Ross, Esq., co-counsel told me "Judge Schelindlin found that the guidelines are unconstitutional and does not even consider enhancements when sentencing."

Pursuant to USC Title 28 §1746 the foregoing is true under the penalty of perjury.

Dominic Antonucci
56682-054
FPC McKean
P.O. Box 8000
Bradford, PA 16701

# Statement of Facts

Re: Dominic Antonucci
Case No S1 04CR828 (SAS)

---

I declare under penalties of perjury pursuant to 28 U.S.C. 1756 that the following facts are true and correct:

My name is Theodore Antonucci Sr. I am the father of Dominic Antonucci. I have met and know Carl Schoeppl as my son Dominic's attorney in the abovestated case.

In a personal conversation with Carl Schoeppl where I was present, my son Dominic was present, as well as Carl Schoeppl being present, Carl Schoeppl stated that he had a conversation with the Assitant U. S. Attorney and because Dominic's offenses bridged the 2000 and 2001 sentencing guidelines that the Assistant U. S. Attorney was going to allow Dominic to plead to the lesser guideline range.

By: Theodore Antonucci Sr. [signature]

Dated: 12/17/07

# Statement of Facts

Re: Dominic Antonucci
Case No S1 04CR828 (SAS)

---

I declare under penalties of perjury pursuant to 28 U.S.C. 1756 that the following facts are true and correct:

My name is Margaret Antonucci. I am the mother of Dominic Antonucci. I have met and know Carl Schoeppl as my son Dominic's attorney in the abovestated case.

In an e-mail conversation I had with Carl Schoeppl (copy attached) dated March 20, 2007, I asked several questions of Mr. Schoeppl at Dominic's behest.

One of those questions was about filing a "late appeal". I recall Dominic telling me, shortly after surrendering to the BOP @ McKean, that in speaking with other inmates at the McKean prison camp, Dominic learned he should have filed an appeal of his sentence despite his attorney's advice that he should not do so.

I knew Dominic wanted to file an appeal of his sentence previous to surrendering to the BOP at McKean because Dominic made the statement, "I want to appeal my sentence" almost immediately after being sentenced on January 5, 2007.

YAHOO! MAIL

Print - Close Window

Date: Tue, 20 Mar 2007 13:15:12 -0700 (PDT)

From: "margaret antonucci" <mrsa1717@yahoo.com>

Subject: dominic

To: "carl schoeppl" <carl@schoepplburke.com>

carl....dom called today and asked me to pose the following questions to you.

1. if he files a "late appeal"...would that "screw up" any potential Florida deal?

2. speaking to the Florida issue.....is it still alive? were you able to learn if any of the information Dom provided was or is reponsible for the arrest or potential arrest of Eugene Cabrerra..... Dom feels because he led them to Cabrerra who in turn led them to Frank Michele (??) who has subsequently pled out....then Dom should receive some type of consideration.

3. would there be any other way to "get the sentence down" that you are aware of?

Dom has one of the heaviest sentences at the camp.....people from the southern district of new york (different judge) with worse circumstances received much less in a sentence.

we would appreciate you immediate response.

still working on financing for the building....from which you will receive your final payment.

thanks margaret

Get your own web address
Have a HUGE year through Yahoo! Small Business.



Print - Close Window

**Subject:** RE: dominic

**Date:** Mon, 26 Mar 2007 17:20:12 -0400

**From:** Carl F. Schoeppl" <Carl@schoepplburke.com>

**To:** 'margaret antonucci" <mrsa1717@yahoo.com>

**CC:** 'Michael W. Burke' <Michael@schoepplburke.com>

Dear Mrs. Antonucci:

Thank you for your e-mail.

1 The Southern District of Florida

The last word that I have from the Southern District of Florida is that they will call me if they have any further interest in utilizing Dominic as a potential cooperating witness. The ball is in their court and we have pushed it as far as we can take it at this point in time. I have received no indication as to whether any of the assistance that Dominic gave resulted in the convictions of any other persons An appeal will likely not be viewed favorably by the Government because it could be viewed as a material breach of Dominic's plea agreement.

2. Reduction in Dominic's Sentence

Dominic's sentence can be reduced through a Rule 35 Motion filed by the Government for cooperation that he gives. The RDAP program can also reduce Dominic's sentence. Dominic also gets credit for good time.

Regards,

Carl]

Carl F. Schoeppl, Esq.
Schoeppl & Burke, P.A.
4651 North Federal Highway
Boca Raton, Florida 33431-5133
(561) 394-8301: T
(561) 394-3121: F
carl@schoepplburke.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately

---

**From:** margaret antonucci [mailto: mrsa1717@yahoo.com ]
**Sent:** Tuesday, March 20, 2007 4:15 PM
**To:** Carl F. Schoeppl
**Subject:** dominic

carl....dom called today and asked me to pose the following questions to you.

1. if he files a "late appeal"...would that "screw up" any potential Florida deal?

2. speaking to the Florida issue.....is it still alive? were you able to learn if any of the information Dom provided was or is reponsible for the arrest or potential arrest of Eugene Cabrerra..... Dom feels because he led them to Cabrerra who in turn led them to Frank Michele (??) who has subsequently pled out....then Dom should receive some type of consideration.

3 would there be any other way to "get the sentence down" that you are aware of?

Dom has one of the heaviest sentences at the camp.....people from the southern district of new york (different judge) with worse circumstances received much less in a sentence.

we would appreciate you immediate response.

still working on financing for the building....from which you will receive your final payment.

thanks margaret

---

Get your own web address
Have a HUGE year through Yahoo! Small Business.

# DECLARATION

The undersigned declares, under penalties of perjury, pursuant to 28 U.S.C. 1746 that the following information is true and correct:

1. I am the moving party in the attached 2255 motion, and supporting memorandum.

2. I have read the attached motion and supporting memorandum. The facts set forth therein are true and correct.

Dominic Antonucci